We have four argued cases this morning and we'll take a recess after the first three because we have to reconstitute the panel and that should take five to ten minutes. So our first case is number 161176, Brixham Solutions v. Jupiter Networks, Mr. Summerfield. Thank you, Your Honor. You may please the court. The focus of my argument today is going to be whether in this particular instance the hypothetical person of ordinary skill is the right paradigm for really evaluating the question of obviousness. And what we typically do when we look at obviousness is we retain an expert and we say, pretend that you're a person of ordinary skill, which you're not. Pretend that you know all the prior art, which you don't. Pretend that you've traveled back in time to the time of invention, which you haven't. Pretend that you haven't read the claims, which you have. And most importantly, pretend that you're not being paid hundreds of dollars to render an opinion in this case and all you're trying to do is really solve a problem. That's what we typically use. It's the best system we have, unless you have a case like this one, where you have not one but four prior art references where all the components of the claimed invention were there in different parts of the references and the authors of those references didn't think to combine them. What you have in that circumstance... You can't have obviousness without anticipation. You can, your honor, yes. But the point is, if all the pieces of the puzzle are in the box and the people had those pieces in front of them and still didn't build the puzzle, then that's pretty clear direct evidence that the invention was non-obvious. If piece A is here and piece B is there... Not when they're in the same reference, your honor. When you pick and choose from different references, of course, we take one from column A, one from column B, and one from column C, we come up with a claimed invention. But where the components of the claimed inventions are themselves in a single reference, four times over, and the authors of those references didn't think to combine them, that's a direct evidence that the invention wasn't obvious. Even if we concede that the passage of time is relevant, the passage of time without action is relevant to the question of motivation to combine, that's only one factor. We have said that passage of time is a factor when you also have, for instance, something like long felt need. You didn't present any evidence of long felt need. No, judge, and I don't think we have to in this case. The point is, it's not a question of passage of time. It's the point that, for example, let's take the specifics of the references that we're talking about here. We have the Hoffmeister reference, and in paragraph 405, which appears at page A1070, the author discussed call admission control, or CAC algorithm, and that prioritizes traffic in a communication network to address overbooking. Hoffmeister then applied the CAC to categorizing setup and holding priorities in normal operations. Even Juniper admits that Hoffmeister didn't apply that algorithm to network failure, which would be required by the claims. There are some areas in obviousness law that kind of address what you're going to, I think. I just think you don't meet them here. For example, teaching away. Do any of these references teach away? Have you argued that any of them teach away? That would be a possibility. Or, as Judge O'Malley referenced, secondary considerations of non-obviousness. It might be a long period of time between when the prior art issued and when the invention came, combining the different pieces of the very same prior art reference, but you don't have a long passage of time here, I don't think. No, we don't. The point is, those are the kinds of things that would go into what I would characterize as circumstantial evidence of obviousness or non-obviousness. Is there a long-felt need? Were there failures by others? Was there a long passage of time? That's essentially going, again, to the hypothetical person paradigm. What were people thinking back then? Let's try to imagine that. Here though, we know what people were thinking. We know what these authors did. The mere fact that you're saying that your empirical data should control in all cases, so the mere fact that there are references out there that haven't taken the combination or haven't taken the next step, is the end of the inquiry? No, Judge, that's not what we're saying at all. We're saying that unlike normal situations where you have element A from reference one and element B from reference two, and neither author thought to combine them, here we have an author that says, here's A, here's B, but I don't combine them. This happens four separate times here. As I mentioned, Hofmeister talks about assigning priorities to pseudo-wires, but he doesn't think to do that in the context of network failure. There is a mention to network failure in Hofmeister, isn't there? There is. 270 paragraphs earlier with regard to an MPLS scheme having nothing to do with pseudo-wires or prioritization. An MPLS, as Juniper's own expert witnesses said, when you have a failure in an MPLS scheme, you just switch traffic from a working path to a standby path. There's no prioritization there. It's automatic. There's no determination made as far as priorities are concerned. Hofmeister says on the one hand, prioritize pseudo-wires. On the other hand, he says, network failure, use MPLS. He does have the prioritization element here. He has the network failure element there in the same reference and doesn't combine them. That is empirical evidence of non-obviousness. It is unlike a situation where you have to take element A, the network failure element from one reference, and combine it with a prioritization element from another reference. Isn't there a difference between saying, okay, your inventor was the first one clever enough to put these two things together and saying that no one else would have thought it was obvious to put them together? Again, Judge, if we're looking at actual evidence of what people did, not just what we thought they might do, we know what people did. We know what Hofmeister did. We know he had both elements in front of him. So Hofmeister's failure to combine them shows that it was non-obvious? Certainly to Hofmeister. And what we have from the panel is a determination that the level of ordinary skill is evident from the references cited themselves. So they said, all you have to do to find out what the level of ordinary skill is is go read these references. Okay, Hofmeister is a person of ordinary skill. Didn't think to combine them. But it doesn't stop there. What case suggests that the failure of someone to make that combination that you say Hofmeister didn't make is relevant to the question of obviousness? None, Judge. And I think that is the point of the argument today. We're asking the court to take a fresh look in circumstances like this, which are unusual admittedly, where you have all the elements of a claim taught disjointedly in a single reference, not just once, but four separate times. Do you think your argument is consistent with KSR? Yes, we do. Because in KSR, there wasn't this particular fact situation. In KSR, it was a refinement or a further explanation of the hypothetical person paradigm. Because there was no other way to look at obviousness. If we don't have a situation like this, we are left with a hypothetical person paradigm. There is no other way to look at obviousness. We have to go back in time and imagine what that person would have done. Here we don't have to do that. We know what people did. Again, it wasn't having to pick and choose from disparate references to come up with the invention. They were all in each of these references. Here, it isn't a KSR situation because you don't have to worry about circumstantial things like what the person of ordinary skill looked like, what they would have known, what problems they were facing. All of those are in the four corners of each of these references. In no reference do the authors actually say, I'm going to actually combine A and B. We're supposed to create a subjective obviousness test. We look at subjectively what these individual prior references did rather than what objectively someone skilled in the art might see. It's not subjective at all, Your Honor. We know what they did in the circumstance. We don't have to interpret. We know what they did. In Hofmeister, you have a teaching of prioritizing pseudo-wires and then 270 paragraphs earlier you have a completely unrelated teaching of network failure. That's not subjective at all. That's a fact and it's undisputed. My problem is that even if we accept the proposition that it's a relevant fact, I don't understand your argument that it is a controlling fact. Because we don't even have to look at the circumstantial evidence that's set forth in KSR. We don't have to imagine what some hypothetical person would have done. We have actual skilled people, as the Board acknowledged, people of ordinary skill that had these things in front of them and didn't think to combine them. That's the best evidence of non-obviousness that we are going to be able to find. Otherwise, again, we are in this pretend universe where you have people opining about what a person that doesn't even exist, knowing far more than they actually do, not having read the claims in suit, coming up with an opinion as to whether something's obvious or not. Again, in most circumstances, that's the only test we have, which is why we use it. But this, in essence, is direct, objective evidence that people of skill and the art at the time didn't think to combine these things. That's true with Hoffmeister. It's true with Owens. It's true with the RFC 3386 reference. It's true with Halabi. In each of these references, each reference had the prioritization element in one place, pseudo wires or paths for path protection in another place, and network failure taught. All four of them. That just isn't disputed here. As a matter of fact, the Board and Juniper rely on that. They consider it an admission by us, well then, of course, it must be obvious. They don't dispute it at all. So, again, if these four references empirically demonstrate that when presented with the pieces of the puzzle, all of them, that the authors didn't think to make the puzzle, then the puzzle cannot be obvious. But again, you don't have a situation where those authors didn't think to put the pieces of the puzzle together despite the passage of time or a long-felt need. The point is, if they didn't appreciate the problem in the first place, because that may be one reason. As a matter of fact, in our brief, we cite to a question that the Board asked me. Are we supposed to guess as to why this is not obvious? The answer is no, but it really doesn't matter. If in fact they didn't think to do it, for whatever reason, whether they didn't see the in the second place or that it was just a bad idea for whatever reason in the third place, any one of those reasons belies the notion that the invention is obvious. So you are advocating for us to look at this particular case differently than all other obviousness cases? Yes. And what other types of cases would you say that we need to change the law on obviousness and apply a different test? Is it just a situation where there's four prior references that teach every element of the claim, each and every one of them, and yet doesn't do the combination? Or would it be, I mean, I'm just curious about the situations where you would apply this new test? Your Honor, where there is direct evidence like this of non-obviousness, where you actually have a reference What about a situation where inventor A is aware of reference B at the time that he files the application for the first reference? That might very well be another instance. In fact, from personal experience, I had that very issue before the Board, where there was, in fact, an author where it was demonstrated that she had knowledge of another reference and didn't think to combine them. And that was our argument there, too. However, you don't have to reach that in this case, because here you don't even have to go that far. Here you have the authors themselves, not being aware of other references, but having their own teachings in front of them. Again, with respect, there is no better evidence of non-obviousness out there than when you have everything in front of the author of a prior art reference, and they don't think to put it together to get the claimed invention. You referred earlier to secondary considerations evidence as being circumstantial. I don't think that's right. Why is it circumstantial? Because it, again, goes to the mindset that we try to get into of the people that were doing this work at the time. There isn't any one individual that we are imputing a long-felt need to. We're just saying generally in the industry, there was this recognized need. There is no one individual that we can say, yes, this person actually recognized the need, but failed to come up with the invention. It is still in the hypothetical realm. It's circumstantial evidence that someone skilled in the art at that time wouldn't have come up with the invention. Here we have the skilled people that didn't come up with the invention, despite having the elements in front of them. That's what makes this direct versus circumstantial evidence. Okay, you're into your rebuttal time. Do you want to save the rest of it here? I do. Thank you. Okay. Thank you. Ms. Carson? May it please the court. There's no basis for disturbing the board's decision that the challenged claims of the 652 patent are obvious. I want to start by correcting a mischaracterization of the record that appellant has just informed the board of. Juniper and the board did not find that all four references disclose every element of the challenged claims. Rather, they found that the references collectively disclosed all of those elements. In terms of the factual premise on which appellant rests for this novel new argument of obviousness, it's just not supported by the record. Is that true of Hofmeister, though? With respect to Hofmeister, the board found that it disclosed each element of the claims, but it disclosed those in the context of setting up a network in terms of admitting paths into the network, as opposed to in the context of network failure. That makes a lot of sense because the Hofmeister reference was directed towards a situation of setting up a new way of implementing pseudowires. The focus of the reference was on setting that up and admitting pseudowires into the network. The reference to network failure was merely to note that the particular system would be well-suited to take advantage of conventional techniques for protecting networks, but protection wasn't a focus of that reference. We admitted that in front of the board and on appeal here. That reference disclosed everything except for the context of network failure. If we move to RFC 3386, that particular reference was a higher level reference that explained various protection techniques and mechanisms that could be used across a wide variety of types of networks. However, it didn't get into the details about how to set up paths and the signaling requirements, which are the first several elements of the challenged claims at issue today. Those were conventional techniques, but they weren't expressly disclosed within the four corners of RFC 3386 because it was focused more on high-level protection schemes. Moving to OWNs, OWNs is an actual implementation of a protection scheme, but it's in the context of an MPLS network, not a pseudowire network. Since the challenged claims require that these things be done in the context of a pseudowire, again, within the four corners of OWNs, it's not disclosed. However, it's a very analogous system, and the 652 patent itself acknowledges that MPLS protection schemes are applicable to pseudowires, but again, not within the four corners. Then we move to HALABI. The context of HALABI is that it's a textbook that gives a high-level view of what's going on in the state of the art. Again, it focuses on high-level protection aspects that apply to all sorts of networks. It does provide some applications of those towards the end of the book, and those, again, are in the context of MPLS networks as opposed to pseudowire networks. In terms of the factual premise of appellant's argument, it's not supported by the record. We do agree that, as a whole, all of the references disclose each of the elements of the challenged claims, but in terms of the particular references, the elements are not disclosed by any one reference. In light of this... Well, you're not saying the elements aren't disclosed by any one reference. You're saying the elements aren't necessarily disclosed in exactly the same context, but there is more than one reference that discloses all the elements. That's correct, yes. The references collectively disclose all of the elements, and most of the references in the record disclose almost all of the elements, but they're each missing a little piece. And that's the precise situation where we come to obviousness, that it would be obvious for one of skill in the art to combine the references. And this is the same framework that we apply under the statute and in this court's precedent. And what appellant is asking the court to do here is completely eviscerate that doctrine and come up with an entirely new standard, which is not... I would guess that in most obviousness situations, probably the inventor of one of those references is aware of other references. I don't know how to quantify it, but it would seem to be a fairly common situation, right? I think that would be correct in some circumstances. There wasn't evidence of that in this particular case, but that may occur often. But I don't think that that changes the inquiry. The inquiry for obviousness is whether one of skill in the art would be motivated to combine. What kind of weight should we give to this kind of evidence where we actually have admittedly people skilled in the art who don't combine? Well, I think that's the case in any case of obviousness. The whole point of obviousness is that the elements were out there in the prior art, but nobody had previously combined them. And that's where the rationales under the KSR precedent come into play. But factually, they're not as close. In other words, they're out there and they're in many, many disparate references, but isn't that different from a situation where you've got some of them in the same reference or if not in the same reference, from closely related references? I'm not sure I'm understanding your question. In this particular case, we do have the elements in different references. The references themselves don't each disclose... Well, you can see that Owens has all the elements. You're just saying it's in a slightly different but wholly analogous context. So it's in the context of an MPLS network, which is a different type of network than a pseudo-wire network. And the 652 patent does state that MPLS protection techniques are applicable to pseudo-wires, but they are different. So in terms of anticipation, you have to check off each of the boxes, right? It has to be in that exact context. All right, I get that. So it's not anticipation. Sure. But is it not relevant that that very inventor, who likely, because of these references all being fairly close in time, was also, if they're one skill in the art, was likely familiar with the other references as well, that that very inventor didn't put these things together? So I think there could be cases where that would be relevant. But in this particular circumstance, given that the Owens reference, which you referred to, is talking about MPLS and the whole reference is about MPLS, it wouldn't really make sense for them to also add in pseudo-wires, because the reference was about MPLS. So in this particular circumstance, I think it makes sense that they didn't expressly apply it to pseudo-wires. There could be a scenario where your hypothetical would make sense, but this is not the case where I think that that would apply. Okay. So the board relied on several of the obviousness rationales from the KSR case to support its decision that, in this particular case, one of skill in the art would be motivated to combine the references. And there's substantial evidence in the record to support that. Juniper presented detailed arguments in its reply brief on that, that were supported by one of skill in the art, Dr. Tal Lavien's declaration. And appellant has not rebutted that in any way. Appellant has not explained why the references teach away or has presented any evidence that there would be a problem in terms of combining it. They presented no evidence whatsoever to rebut that. I think unless there are any other questions from the panel, I've addressed all of the issues. Okay. Thank you, Ms. Carson. Mr. Somerville. Let's talk about what the board actually said. First with the lobby. On page A15, the board said that the lobby reference teaches automatically switching from an active primary pseudo-wire to an inactive secondary pseudo-wire. On A16, the board cited the lobby's teachings of priority preemption attributes that are among the basic attributes of network traffic trunks that are significant for traffic engineering. Those are the elements of the claim. So for Ms. Carson to suggest that the board didn't find those for these references is just incorrect. Now we go to RFC 3386. There, on page A11, the board talked about pseudo-wires and the preemption of lower priority traffic in the event of network failure on page A11. They also said that there should be priorities assigned to protection connections taught in RFC 3386 on page A13. So again, the board expressly found that those elements were in these references, all of them, not just a piece here and a piece there. Then we get to Owens. Now as I understand Ms. Carson's statement, she says, well, it's MPLS. But the only way this is relevant to an obviousness situation is if it's analogous prior art. So the fact that it's MPLS, which the 652 patent says is relevant to pseudo-wires, does matter. And it's clear that the board's... Mr. Sarnfield, we're out of time. Thank you. Thank you. Thank you, our counsel. The case is submitted. And now we move to...